UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ADRIANE W. MOZELLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-cv-38 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commission of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Adriane W. Mozelle, on January 30, 2018. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Adriane W. Mozelle, filed an application for Disability Insurance Benefits on May 20, 2014, alleging a disability onset date of May 15, 2013. (Tr. 14). The Disability Determination Bureau denied Mozelle's application initially on August 19, 2014, and again upon reconsideration on November 23, 2014. (Tr. 14). Mozelle subsequently filed a timely request for a hearing on January 5, 2015. (Tr. 14). A hearing was held on November 9, 2016, before Administrative Law Judge (ALJ) Michelle Whetsel, and the ALJ issued an unfavorable decision on November 25, 2016. (Tr. 14-23). Vocational Expert (VE) Toni M. McFarland testified at the hearing. (Tr. 14). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

Mozelle met the insured status requirements of the Social Security Act through December 31, 2016. (Tr. 16). At step one of the five-step sequential analysis for determining whether an

individual is disabled, the ALJ found that Mozelle had not engaged in substantial gainful activity since May 15, 2013, the alleged onset date. (Tr. 16).

At step two, the ALJ determined that Mozelle had the following severe impairments: Cauda Equina syndrome, spinal stenosis, and hypertension. (Tr. 16). The ALJ determined that Mozelle's severe impairments significantly limited her ability to perform basic work activities. (Tr. 16).

At step three, the ALJ concluded that Mozelle did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ considered Mozelle's impairments against the criteria set forth in listings 1.04 and 4.00 *et seq.* (Tr. 16). The ALJ indicated that no specific listing pertained to hypertension, so the ALJ considered the entirety of the listings 4.00 *et seq.,* cardiovascular system. (Tr. 17). The ALJ determined that based on a review of the totality of the evidence, Mozelle did not meet or medically equal the listed impairments. (Tr. 17). However, she required accommodation in her residual functional capacity. (Tr. 17).

After consideration of the entire record, the ALJ then assessed Mozelle's residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to lift and carry up to 10 pounds occasionally, 5 pounds frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant must never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She must avoid concentrated exposure to wet, uneven terrain, and hazards such as machinery, and unprotected heights. She must also be allowed to alternate between sitting and standing, without being off task, sitting for 15 to 20 minutes then standing for similar durational periods.

(Tr. 17). The ALJ explained that in considering Mozelle's symptoms she followed a two-step process. (Tr. 17). First, she determined whether there was an underlying determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Mozelle's pain or other symptoms. (Tr. 17). Then, she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Mozelle's functioning. (Tr. 17).

Mozelle alleged disability due to Cauda Equina syndrome, spinal stenosis, and hypertension. (Tr. 18). At the hearing, she testified that she stopped working in 2013 because of pain in her lower back and buttocks, down into her right leg. (Tr. 18). She stated that as a certified nursing assistant (CNA) she was on her feet most of the workday and that standing and lifting equipment and patients was very difficult on her. (Tr. 18). She tried medication management, but she experienced fatigue and falling in public. (Tr. 18). She also testified that epidurals were effective for a week or two, but then the pain would intensify. (Tr. 18). Additionally, she underwent surgery in May of 2013 which relieved the radiation of pain into the buttock but not the back pain. (Tr. 18). She continued physical therapy, medications, and attempted returning to work but reported that the pain was so intense she could not fulfill the duties of the medium exertional work and needed to sit or alternate positions. (Tr. 18). The ALJ determined that Mozelle was incapable of performing her last job as a nurse, which required medium exertion. (Tr. 18).

Mozelle testified to her activities of daily living. (Tr. 18). She indicated that she performed daily physical therapy exercises and drove to and from therapy. (Tr. 18). She also alleged that she could sit for 15-20 minutes and lift 10 pounds. (Tr. 18). Mozelle reported that

3

she washed dishes 2 to 3 times a week and that she went up and down stairs at her home at least 1 to 2 times daily. (Tr. 18).

The ALJ limited Mozelle to no more than sedentary exertional work, no more than lifting 10 pounds on an occasional basis, and provided an allowance to alternate positions. (Tr. 18). The ALJ found that Mozelle's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 18). However, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18).

On May 9, 2014, Dr. Mekhail performed a right L5-S1 decompression laminectomy, foraminotomy, and partial facetectomy with micro discectomy on Mozelle. (Tr. 19). A few weeks post-surgery, Mozelle reported only some weakness in her right leg and some nausea. (Tr. 19). She denied worsening back pain, yet she indicated that she had some pain when she twisted her back. (Tr. 19).

She met with consultative examiner, Sorai Arora, M.D., after the surgery and reported low back pain with radiation to the right leg and severe tingling and numbness in her right lower extremity. (Tr. 19). Mozelle also stated that she frequently fell. (Tr. 19). The ALJ noted that Mozelle's reports to Dr. Arora contradicted her reports to Dr. Mekhail, yet were not supportive of disabling limitations. (Tr. 19). Additionally, her physical therapy notes from ATI indicated general stabilization and improvement in her functional abilities after surgery. (Tr. 19).

By 2015, the ALJ noted that the UIC Medical Center physical observation notes indicated that Mozelle had "no notable issues," retained full 5/5 bilateral lower extremity strength, and that she had made "excellent progress." (Tr. 20). The ALJ recognized that Mozelle underwent a traumatic period and necessitated surgical intervention. (Tr. 20). However, the ALJ determined

that there was no point where Mozelle's limitations were so significantly deteriorated that they prevented her from gainful employment. (Tr. 20).

As for the opinion evidence, the ALJ assigned little weight to the opinions of the State agency physicians. (Tr. 20). The State agency physicians opined that Mozelle's back issues and hypertension prevented her from engaging in more than light exertional work. (Tr. 20). The ALJ, however, indicated that the records supported the limitations to work at the sedentary level with specific reductions including environmental factors, and an allowance to sit and/or stand due to build-up of pain and alleviation of neurological symptoms. (Tr. 20).

At step four, the ALJ found that Mozelle was able to perform her past relevant work as an order clerk and tutor. (Tr. 21). The ALJ found that the work did not require the performance of work-related activities precluded by Mozelle's RFC. (Tr. 21). The ALJ found that Mozelle had not been under a disability, as defined in the Social Security Act, from May 15, 2013 through the date of this decision, November 25, 2016. (Tr. 14-22).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28

L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining

capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* ***Biestek v. Berryhill,*** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability, does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Mozelle has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand the matter for additional proceedings. In her appeal, Mozelle has argued that: (1) the RFC was not supported by substantial evidence; and (2) the ALJ failed to properly evaluate her subjective symptoms.

Mozelle has argued that the ALJ erred in evaluating her RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations." ***Young v. Barnhart***, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical

evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Although the ALJ does not need to discuss every piece of evidence, she cannot ignore evidence that undermines her ultimate conclusions. *Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support his conclusion and explain why that evidence was rejected.") (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v.*

8

*Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "A decision that lacks adequate discussion of the issues will be remanded." *Moore*, 743 F.3d at 1121.

An ALJ is not required to rely solely on medical opinions to determine the RFC. *Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010) (finding that the rejection of the opinion record left an evidentiary deficit because the rest of the record did "not support the parameters included in the ALJ's residual functional capacity determination"); *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007) (recognizing that an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians). The final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the ALJ. *See* **20 C.F.R. § 404.1527(e)(2)**.

The ALJ assessed Mozelle's RFC as follows:

> [T]he claimant has the residual functional capacity (RFC) to lift and carry up to 10 pounds occasionally, 5 pounds frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant must never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She must avoid concentrated exposure to wet, uneven terrain, and hazards such as machinery, and unprotected heights. She must also be allowed to alternate between sitting and standing, without being off task, sitting for 15 to 20 minutes then standing for similar durational periods.

(Tr. 17). Mozelle contends that the limitations in the RFC were inconsistent with all medical opinion evidence and her hearing testimony, and that the ALJ failed to provide any evidentiary basis for her conclusions. Specifically, she has argued that the ALJ failed to explain the basis for her finding that Mozelle could sit and stand in 15 to 20-minute intervals over the course of an eight-hour workday.

The ALJ assigned little weight to the opinions of the State agency physicians who opined that Mozelle's back issues and hypertension prevented her from engaging in more than light

9

exertional work. (Tr. 20). Additionally, the non-examining State agency physicians opined that Mozelle was able to stand/walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; occasionally lift or carry 20 pounds; and frequently lift or carry 10 pounds. (Tr. 125-26, 135). However, the ALJ determined that the RFC and records supported the limitation to work at the sedentary level and warranted more specific reductions including environmental factors, and an allowance to sit and/or stand due to build-up of pain and alleviation of neurological symptoms. (Tr. 20).

Neither non-examining State agency physician opined that Mozelle required the option to sit and stand in 15 to 20-minute increments. Mozelle testified that she could sit for 15 to 20 minutes in referencing her typical activities of daily living. The ALJ merely listed this activity but did not explain how she factored that into the RFC. Moreover, the ALJ did not account for Mozelle's testimony that she struggled rising from the seated position and that she was exhausted after a few hours of activity. The medical records indicated that Mozelle's ability to rise from sitting to standing was "difficult," "painful," and "very slow." (Tr. 40, 277, 289). Therefore, the ALJ did not explain how Mozelle could alternate between sitting and standing, "without being off task." (Tr. 748). The VE testified that an individual could be off task no more than 15 percent of the day and remain employed. (Tr. 84). Considering the lack of medical opinion evidence and the ALJ's failure to offer any explanation, it is unclear what evidence the ALJ relied on in determining that Mozelle could alternate between sitting and standing every 15 to 20 minutes, without being off task, for eight hours a day, five days a week.

Additionally, at the hearing Mozelle's attorney brought to the attention of the ALJ that Mozelle alternated between sitting and standing more often than every 15 minutes. The VE testified that an individual could alternate positions no more frequently than every 15 minutes to

sustain work. (Tr. 89). Thus, Mozelle contends that her inability to remain seated or stand for more than 10 minutes at the hearing contradicted the ALJ's RFC finding. The ALJ did not address this in her decision. The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected. *Moore*, 743 F.3d at 1123.

Under SSR 96-8p, the ALJ was required to provide a narrative discussion describing how the evidence supported each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). Rather, the ALJ has provided a summary of the record, which has left unclear what she relied on in making the RFC. The ALJ is not required to adopt any physician's opinion in developing the RFC because developing the RFC is a fact-finding task assigned to the ALJ. *See* SSR 96-8p, 1996 WL 374184, at *2 n.4. However, the ALJ commits reversible error when she fails to point to evidence to support her RFC determination. *Suide v. Astrue,* 371 F. App'x 684, 690 (7th Cir. 2010). The court cannot trace the ALJ's reasoning and now remands this matter for additional consideration of the limitations in the RFC finding.

Next, Mozelle contends that the ALJ improperly evaluated her subjective symptoms. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue,* 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support her evaluation with specific reasons that are supported by the record. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally

11

limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029 at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) The individual's daily activities;
>
> (ii) Location, duration, frequency, and intensity of pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) Type, dosage, effectiveness, and side effects of any medication;
>
> (v) Treatment, other than medication, for relief of pain or other symptoms;
>
> (vi) Other measures taken to relieve pain or other symptoms;
>
> (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

The ALJ found that Mozelle's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 18). However, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18). Mozelle has argued that the ALJ's belief that subjective complaints can be accepted only if "entirely consistent" with the evidence is legal error. "However, the simple fact that an ALJ used boilerplate language does not

12

automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination." *Pepper*, 712 F.3d at 367–68.

Mozelle has argued that the ALJ's subjective symptom analysis lacked explanation and support. She contends that the ALJ did not adequately consider her activities of daily living and the variety of treatments she sought to relieve her pain. The Commissioner asserts that the ALJ's assessment of Mozelle's subjective complaints was well-articulated and supported by substantial evidence.

The ALJ's decision referenced Mozelle's activities of daily living that she could sit for 15 to 20 minutes, perform daily physical therapy exercises, drive to and from physical therapy, lift 10 pounds, and do the dishes. (Tr. 18). Also, the ALJ indicated that Mozelle rode in a car to church members' homes, talked on the phone, sat and talked for 45-minutes up to an hour, and went up and down stairs at least 1 to 2 times daily. (Tr. 18). The ALJ recounted Mozelle's testimony regarding her daily living activities, all of which were relevant to her subjective symptom analysis.

The ALJ, however, did not provide analysis and reasons as to why she found Mozelle's activities of daily living undermined her complaints of pain. Moreover, the ALJ did not consider Mozelle's testimony that she used paper plates because the glass, china, and dishes were too heavy and that she frequently dropped them because of their weight. (Tr. 45). She testified that individuals from her church helped her 2 to 3 times a week to accomplish basic chores. (Tr. 44). Also, she indicated that she only remained active in her church because fellow parishioners went to her house for "home care and home ministry." (Tr. 44, 46). An ALJ cannot disregard a claimant's limitations in performing household activities. *Moss v. Astrue,* 555 F.3d 556, 562 (7th Cir. 2009).

13

Mozelle also has argued that the ALJ failed to explain how her treatments and extensive list of prescription medications were inconsistent with her allegations of disabling pain. Mozelle underwent three back surgeries, epidural steroid injections, and physical therapy. (Tr. 38-40). Additionally, she was prescribed over 20 medications between 2012 and 2016. (Tr. 797-805). The ALJ's decision noted that Mozelle admitted to some relief from the injections, but more often than not the relief was short-lived. (Tr. 18). The record indicated that the injections offered her a week's worth of relief. (Tr. 1002). Additionally, she testified that her third back surgery made her more functional day-to-day, but she encountered difficulties after returning to work. (Tr. 41-42). She stated that physical therapy did not improve her pain or make her more functional. (Tr. 38).

The ALJ's decision recognized that Mozelle took pain medications and the amount of treatment she underwent. However, it did not explain how her course of treatment did not support her allegations of pain. *See **Carradine v. Barnhart**,* 360 F.3d 751, 755 (7th Cir. 2004) (highlighting the improbability that the plaintiff would have undergone extensive pain-treatment procedures solely to strengthen the credibility of her complaints of pain and to increase her chances of obtaining disability benefits and the improbability that she fooled the doctors, emergency-room personnel, and other medical workers into thinking she suffered extreme pain enough that they provided her with the treatments). "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, 2017 WL 5180304, at *9.

The ALJ considered Mozelle's daily living activities, the objective medical evidence, the treatment history, and the medical opinion evidence. However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" **Lopez ex rel. Lopez v. Barnhart**, 336 F.3d 535, 539–40 (7th Cir. 2003). The ALJ's decision stated that "[w]hen evaluating the consistency of the evidence as it relates to the allegations, the undersigned takes into consideration various factors, including the objective medical evidence, statements relating to alleged pain, medical treatment, medications taken, and any opinions evidence." (Tr. 19). Yet, the ALJ failed to offer specific reasons for why Mozelle's subjective complaints were unsupported by the record. Although the ALJ may ultimately come to the same conclusion in assessing Mozelle's subjective symptoms, remand is necessary for the ALJ to fully consider all the evidence of record and to properly consider the required factors.

Mozelle has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." **Allord v. Astrue**, 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. **Briscoe v. Barnhart**, 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 10th day of April, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge